**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---------------------------------------------------------------- x

STEPHANIE SLAWINSKI, MELISSA    :
BERNAS, NICOLE CHANDLER, KARA   :
WIDTMANN, SARAH TEUBER, and MIKE :
BANKS, individually and on behalf of all others :    Civil Action No.: <u>14-cv-10128</u>
similarly-situated,             :
                          :
           Plaintiffs,   :
                          :    **CLASS AND COLLECTIVE**
      v.                  :    **ACTION COMPLAINT**
                          :
LAUTREC CORPORATION d/b/a/    :
MCFADDEN'S RESTAURANT AND SALOON :    **Jury Trial Demanded**
CHICAGO, JOHN SULLIVAN, DOE    :
CORPORATIONS I through X, inclusive, and :
DOE LIMITED LIABILITY COMPANIES I :
through X, inclusive,          :
            Defendants.  :

---------------------------------------------------------------- x

       Individual and Representative Plaintiffs Stephanie Slawinski, Melissa Bernas, Nicole Chandler, Kara Widtmann, Sarah Teuber and Mike Banks (collectively "Plaintiffs"), on behalf of themselves and all other similarly-situated individuals, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, against Defendants Lautrec Corporation d/b/a/ McFadden's Restaurant and Saloon Chicago ("McFadden's"), John Sullivan ("Sullivan"), Doe Corporations I through X, inclusive, and Doe Corporations I through X, inclusive, (collectively, "Defendants") as follows:

## NATURE OF THE CLAIMS

      1.    This action seeks to recover unpaid minimum wages, overtime wages, misappropriated gratuities and other wages on behalf of Plaintiffs and all former and current front-of-house service staff, including Servers, Bartenders, Bar Backs, "Promo Girls" and other service

staff (the "Service Employees")[1] who work or have worked at McFadden's, an Irish-themed pub and restaurant located in downtown Chicago.

2.     Plaintiffs bring this action on behalf of themselves and other similarly-situated current and former Service Employees who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), and specifically the collective action provision of 29 U.S.C. § 216(b), who worked at McFadden's between December 15, 2011 through the resolution of this action (the "FLSA Collective"), to remedy Defendants' wage and hour violations of the FLSA.

3.     Plaintiffs further bring causes of action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23" and "FRCP," respectively), on behalf of themselves and other similarly-situated current and former Service Employees, who worked at McFadden's, between December 15, 2011 through resolution of this action for Illinois-mandated minimum wages and overtime wages arising under the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") (the "Illinois Minimum Wage Class").

4.      Plaintiffs also bring causes of action pursuant to Rule 23, on behalf of themselves and other similarly-situated current and former Service Employees, who worked at McFadden's, between December 15, 2004 through resolution of this action for unpaid earned wages arising under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA") (the "Illinois IWPCA Class").

---

[1]     There are no bussers employed at McFadden's.  The Servers, who are exclusively female, bus their own tables.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § l331 and 29 U.S.C. §216(b).

6.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because those claims are so closely related to Plaintiffs' claims that they form part of the same case or controversy.

7.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) as the events and conduct giving rise to the claims occurred in this district.

## THE PARTIES

8.     Plaintiff Stephanie Slawinski ("Slawinski") is a former Service Employee at McFadden's who resides in Cook County, Illinois.  Slawinski is a covered "employee" within the meaning of the FLSA, IMWL and ILCS.

9.     Plaintiff Melissa Bernas ("Bernas") is a former Service Employee at McFadden's who resides in Cook County, Illinois.  Bernas is a covered "employee" within the meaning of the FLSA, IMWL and ILCS.

10.    Plaintiff Nicole Chandler ("Chandler") is a former Service Employee at McFadden's who resides in Cook County, Illinois.  Chandler is a covered "employee" within the meaning of the FLSA, IMWL and ILCS.

11.    Plaintiff Kara Widtmann ("Widtmann") is a former Service Employee at McFadden's who resides in Cook County, Illinois.  Widtmann is a covered "employee" within the meaning of the FLSA, IMWL and ILCS.

12.     Plaintiff Sarah Teuber ("Teuber") is a former Service Employee at McFadden's who resides in Cook County, Illinois.  Teuber is a covered "employee" within the meaning of the FLSA, IMWL and ILCS.

13.     Plaintiff Mike Banks ("Banks") is a former Service Employee at McFadden's who resides in Cook County, Illinois.  Banks is a "covered" employee within the meaning of the FLSA, IMWL and ILCS.

14.     Defendant Lautrec Corporation d/b/a/ McFadden's Restaurant and Saloon Chicago ("McFadden's") is a Illinois corporation formed and existing under the laws of the State of Illinois, with its principal place of business located at 1206 N. State Parkway, Chicago, Illinois 60610. McFadden's is and was a covered "employer" within the meaning of the FLSA, IMWL and ILCS. At all relevant times, McFadden's exercised control over the terms and conditions of Plaintiffs' employment and those of all other Service Employees, including but not limited to the (1) control of day to day operations; (2) the power to hire and fire employees; (3) supervision and control of employee work schedules; (4) the rate and method of payment for employees and (5) the maintenance of employment records for McFadden's.

15.     Upon information and belief, Defendant Sullivan is a resident of New York, New York, and at all relevant times, owns, operates and controls McFadden's.  Sullivan is and was a covered "employer" within the meaning of the FLSA, IMWL and ILCS.  At all relevant times, Defendant Sullivan exercised control over the terms and conditions of Plaintiffs' employment and those of all other Service Employees, including but not limited to the (1) control of day to day operations; (2) the power to hire and fire employees; (3) supervision and control of employee work schedules; (4) the rate and method of payment for employees and (5) the maintenance of employment records for McFadden's.

4

16.     McFadden's is one of many bars and restaurants owned and operated by Defendant Sullivan throughout the United States.  Defendant Sullivan owns and operates more than 30 restaurant and bars nationwide, including the following establishments in New York, New York: Calico Jack's, Cantina, Johnny Utah's, McFadden's, McFadden's Saloon, McFadden's 42, Savannah, Snitch, Sully's Restaurant, Tavern on Third and Turtle Bay.

17.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOE Corporations I through X, inclusive, and DOE Limited Liability Companies I through X, inclusive, are unknown to Plaintiffs who, therefore, sue these Defendants by such fictitious names and will seek leave to amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiffs believe that each Defendant named as a DOE Corporation or DOE Limited Liability Company, is responsible in some manner for the acts and/or omissions alleged herein.

18.     Upon information and belief, Defendant Sullivan is the owner, director or president of Defendants named herein as DOE Corporations I through X, inclusive, and DOE Limited Liability Companies I through X, inclusive. Upon information and belief, Defendants named herein as DOE Corporations I through X, inclusive, and DOE Limited Liability Companies I through X, inclusive, are the parent companies that own Defendant McFadden's.

19.     At all relevant times, McFadden's, was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

20.     At all relevant times, McFadden's annual gross volume of sales made or business done was not less than $500,000.00.

21.     At all relevant times, the work performed by Plaintiffs and similarly-situated Service Employees was directly essential to the business operated by Defendants.

**FACTUAL ALLEGATIONS**

**Overtime and Minimum Wage Violations**

22.     At all relevant times, Defendants and their managers and supervisors, knowingly and intentionally engaged and continue to engage in numerous violations of the FLSA, IMWL and ILCS.

23.     While working for Defendants, Plaintiffs and all Service Employees are regularly required to perform work for Defendants without receiving proper minimum wages or overtime compensation as required by the FLSA, IMWL and ILCS.

24.     McFadden's is open daily during the following hours:

Sunday – Friday:     11:00 a.m. to 4:00 a.m.
Saturday:     11:00 a.m. to 5:00 a.m.

25.     Plaintiffs and all other Service Employees regularly work a single shift from approximately 5:00 p.m. to any time between approximately 5:30 through 6:30 a.m.

26.     Plaintiffs and all other Service Employees regularly work double shifts from approximately 11:00 a.m. to approximately 12:00 a.m. or later.

27.     Although McFadden's purports to close at 4:00 a.m. six nights a week and 5:00 a.m. on Saturdays, Plaintiffs and all other Service Employees had to remain beyond "closing" time in order to clean, calculate tip distributions and perform other tasks to close the bar.

28.     This work regularly takes more than one (1) hour to complete.

29.     As a result, Plaintiffs and all other Service Employees who closed the bar often leave McFadden's between 5:30 a.m. and 6:30 a.m.

30.     Plaintiffs and many other Service Employees regularly and consistently work more than forty (40) hours per week, and often between sixty (60) and seventy (70) hours per week at McFadden's.

31. At all relevant times, Plaintiffs and the other Service Employees are not paid for any hours worked over forty (40) in one week. Therefore, for the hours worked in excess of forty (40) hours per week, Plaintiffs and the other Service Employees have not been paid any minimum wages.

32. Additionally, for the hours worked in excess of forty (40) hours per week, Plaintiffs and the other Service Employees have not been paid any premium overtime compensation.

**"Promo Girl" Position**

33. At all relevant times, certain Service Employees at McFadden's have been paid exclusively through cash from tips and not paid any hourly wages.

34. Specifically, McFadden's has a service position called "Promo Girl," which is performed exclusively by female employees and divided into five (5) categories of service work.

35. The five (5) Promo Girl categories are:

    a. Coat check
    b. Beer tub
    c. Promotional work
    d. Door
    e. Shots girl

36. The female Promo Girls are assigned to work a specific category for each shift.

37. At all relevant times, there has not been any method of time keeping in use at McFadden's for the Promo Girls nor were they required to track their hours for these shifts in any manner.

38. When an employee worked the coat check position, she did not clock-in or clock-out and did not receive any hourly pay. Tips earned during the shift were the only wages she received. Only at various times, McFadden's paid the employee $1 per coat during a shift.

7

39.     When an employee worked the beer tub position, she did not clock-in or clock-out and did not receive any hourly pay.  The employee stood behind a large tub filled with beer and sold beer to customers throughout the shift.  Tips earned during the shift were the only wages she received.

40.     When a Promo Girl did promotional work during a shift, the employee was responsible for soliciting customer names, telephone numbers, dates of birth and email addresses for purposes of sending the customers at McFadden's happy hour coupons.

41.     Employees did not clock-in or clock-out for these shifts and did not receive any hourly pay.  Rather, the Promo Girls were told that they would receive approximately $5.00 for each page of customer information that they collected, which was approximately 25 customer names.

42.     All of the customer names and contact information that the Promo Girls collected had to be typed and sent to the managers at McFadden's before their payment could be received.

43.     In general, it took Promo Girls three (3) to four (4) hours to type in the information.

44.     Promo Girls were not compensated for this time.

45.     Additionally, Promo Girls were not compensated for customer names that had previously been collected and entered into McFadden's database for promotional mailings and free happy hour promotions.

46.     Approximately 30 to 40 percent of the customer names collected by the Promo Girls on any given weekend night were previously obtained customer names.  Thus, they were not compensated for work relating to these customers.

47.     When a Promo Girl worked the door position, she did not clock-in or clock-out for hourly pay, but rather was paid an arbitrary flat fee in cash by the manager at the end of the shift.

48.     When an employee worked the shots girl position, she did not clock-in or clock-out and did not receive any hourly pay.  Tips earned during the shift were the only wages she received.  Her job was to circulate throughout the bar selling shots of alcohol to customers.

49.     At the end of the shift, the shots girl was required to pay a sum of money back to McFadden's for each shot sold.  Whatever amount of money remained after the payout, she was permitted to keep as earned tips.

**Unpaid Wages for Work Performed by Service Employees**

50.     At all relevant times, Defendants have required Plaintiffs and the Service Employees to perform non-tip producing work on a regular basis for which Defendants have failed to pay any hourly wages.

51.     McFadden's has regularly promoted "all you can drink" specials to its customers, also called "promo specials" or "wristband parties."

52.     These "all you can drink" specials permit a customer to pay a flat fee of between $25 and $40 for colored wristbands, which allowed them unlimited free drinks for two (2) to three (3) hours.

53.     Customers with wristbands receive their drinks for no additional charge and do not tip the Service Employees.

54.     Customers with wristbands compose a significant portion of the overall customers on any given night, especially from Wednesday through Saturday.

55.     The Service Employees perform considerable work for customers with wristbands without receiving tips and without receiving any minimum or overtime wage.

56.     At all relevant times, no portion of the $25 to $40 fees paid for the wristbands go to the Service Employees.

**Facebook Promotions**

57.     As part of their employment at McFadden's, Plaintiffs and the other Service Employees were required to promote McFadden's. Specifically, the Service Employees were required to expend considerable effort to increase the visibility and exposure of McFadden's through word of mouth and social media.

58.     Employees were told that they must link their personal Facebook pages to the McFadden's Facebook page, https://www.facebook.com/mcfaddenschicago, and that they had to allow their managers and supervisors to access their own Facebook pages.

59.     Defendants regularly monitored Plaintiffs and the Service Employees' personal Facebook pages to confirm that the employees were promoting McFadden's.

60.     The time Service Employees were expected to spend engaging in promotional work on a weekly basis was significant.  However, at no time were Plaintiffs and the other Service Employees compensated for this work.  They were not paid hourly wages, commissions or a flat fee.

61.     Despite the fact that Defendants did not compensate the Service Employees for this work, they were expressly told verbally and in writing that this work was a condition of their employment and that if they failed to perform this promotional activity, shifts would be eliminated from their weekly schedules.

62.     In multiple emails, Defendants detailed what was expected of the Service Employees.  The following excerpts are from emails written by managers during the relevant time period:

> Please invite all of your Facebook friends to the McFadden's St. Patrick's Day event. St. Patrick's Day in and of itself will be a big day no matter what, but for us to really take it to the next level will take a collaborative effort on all our parts.

> Hi all!
> I made a FB event for St. Patrick's Day and invited everyone I was
> friends with from the staff to it.  Please invite all of your friends to
> this event!  We had an amazing St. Patrick's Day last year and I hope
> to beat the sales this year!
>
> Keep promoting your shifts, doing everything you can to bring
> people out, especially for the late night.

63.     In addition to not receiving compensation and being threatened with retaliation,

Plaintiffs and the other Service Employees were not allowed to decline the Facebook promotion

tasks.

64.     Many Service Employees were concerned that prospective employers, professors

and even family members would see the McFadden's links and postings of photos depicting the

female employees in provocative clothing, as well as customers and employees engaging in

excessive drinking and lewd conduct.

65.     However, Defendants refused to allow Plaintiffs and the other Service Employees

to "opt-out" of the Facebook promotional work and failed to pay the Plaintiffs and the other Service

Employees for time performing these tasks.

**Tips and Tip Pooling at McFadden's**

66.     There were numerous private party events held at McFadden's during the relevant

time period.

67.     However, the Service Employees were not properly distributed the service charges

and/or gratuities from these events.

68.     Management retained a portion of the service charges and/or gratuities and/or

further distributed portions to non-tipped employees, including the event coordinators, and other

individuals not entitled to tip distributions under federal and state law. The event coordinators worked in an administrative capacity and were not Service Employees.

69.     The Servers did not pool their tips. However, they were required to pay the Bartenders a set percentage of their gross tips for each shift.

70.     The Bartenders were required to pool their tips with the other Bartenders.

71.     After receiving tips from the Servers, the Bartenders tipped the Bar Backs a percentage from the gross tip pool.

72.     At no time were Bartenders and Bar Backs provided tip pool closing sheets at the end of each shift, documenting the gross tips and percentage distributions to each member of the tip pool. In fact, daily and weekly tip closing sheets have never been provided to Service Employees at any time.

73.     As such, Defendants have failed to satisfy the strict requirements pursuant to the FLSA and Illinois law that govern mandatory tip pools.

**Time Tracking and Notice Violations**

74.     Although Bartenders and Servers were required to clock-in and clock-out for each shift in order to access the Point of Sale ("POS") system, they were not paid for all hours worked.

75.     The Servers and Bartenders signed out of the POS system when the bar closed to customers.  However, they were required to remain at McFadden's and perform the work necessary to closing the bar, including cleaning and calculating tips.

76.     This work was "off the clock" time spent at McFadden's and Service Employees regularly worked additional time, often more than one (1) or two (2) hours when closing the bar at the end of the night.

77.     Moreover, not all of the cash registers behind the bar at McFadden's were connected to the POS system.

78.     These older registers, called "banger" registers, were used for cash purchases only and were not connected to the POS system. As such, the purchases on these registers have not been tracked or recorded in any manner.

79.     Bartenders assigned to the "banger" resisters during a shift were not signed in to the POS system, yet on average, still performed work for ten (10) hours or more.

80.     McFadden's also regularly had "guest Bartenders" work at the bar.

81.     At all relevant times, there were approximately three (3) "guest bartender" POS sign-in codes. Upon information and belief, these guest sign-in codes for the POS system were also used by McFadden's full time Bartenders and Servers.

82.     As a result, numerous time records for Service Employees are inaccurate.

### REPRESENTATIVE PLAINTIFFS

**Stephanie Slawinski, Melissa Bernas, Nicole Chandler, Kara Widtmann and Sarah Teuber**

83.     Stephanie Slawinski worked at McFadden's from October 2012 through April 2013 as a Promo Girl and Server.  She was 23 years old when hired.

84.     Melissa Bernas worked at McFadden's from March 2009 through January 2010 as a Promo Girl and Server.  She was 21 years of age when hired.  Bernas returned to work at McFadden's in 2011 as a Promo Girl and Server and remained employed until on or about January 2013.

85.     Nicole Chandler worked at McFadden's from July 2011 through May 2013 as a Promo Girl and Server.  She was 22 years old when hired.

86.     Kara Widtmann worked at McFadden's from September 2011 through January 2012 as a Promo Girl and from January 2012 through December 2012 as a Server. She was 21 years old when hired.

87.     Sarah Teuber worked at McFadden's from January 2011 through May 2012 as a Promo Girl and office assistant. She was 22 years old when hired.

88.     At all relevant times during their employment, Slawinski, Bernas, Chandler and Widtmann worked as Servers and Promo Girls.

89.     When Slawinski, Bernas, Chandler and Widtmann worked as Servers, which generally amounted to two (2) or three (3) days a week, they clocked-in and clocked-out in order to be connected to the POS system.

90.     For all shifts worked as Promo Girls, however, Slawinski, Bernas, Chandler, Widtmann and Teuber neither clocked-in or clocked-out nor did Defendants ask them to track their hours worked.

91.     At all relevant times, Slawinski, Bernas, Chandler, Widtmann and Teuber regularly and often worked double shifts.

92.     From Monday through Friday, when they worked as Servers, they generally arrived to work at 4:00 or 4:30 p.m. and clocked-out at approximately 4:00 a.m. After they clocked-out of the POS system, however, they were required to perform additional work necessary to close down the bar.

93.     For Server shifts on Saturdays, Slawinski, Bernas, Chandler and Widtmann generally arrived to work at 4:00 p.m. and clocked out at approximately 5:00 to 6:00 a.m. After they clocked out of the POS system, however, the Servers were required to perform additional work necessary to close down the bar.

14

94.     When Slawinski, Bernas, Chandler and Widtmann worked double shifts, they arrived at 12:00 p.m. and regularly would not finish until after midnight.

95.     When Slawinski, Bernas, Chandler, Widtmann and Teuber were scheduled to work as Promo Girls, for any of the five (5) positions of door, coat check, beer tub, promotional work or shots girl, they were required to remain working until the bar closed and assist in closing it down.

96.     For example, Slawinski had to work one night until closing, even though she was also scheduled to work the following morning as the only female server for a special wristband event called the Polar Bear Plunge. Her work finished after 5:00 a.m. and the Polar Bear Plunge required her shift to begin at 8:00 a.m. Slawinski slept at McFadden's between the two shifts.

97.     The next morning, more than 50 people arrived for the Polar Bear Plunge and Slawinski was the only McFadden's employee working to service the full breakfast and drinks for all 50 people.

98.     Slawinski, Bernas, Chandler and Widtmann worked many private party events as Servers.

99.     However, they were not properly distributed gratuities from these events.

100.    In addition to not properly distributing the entire service charge and/or gratuity to tipped employees, management retained a portion of the mandatory gratuities and further distributed portions to non-tipped employees, including the event coordinators and other individuals not entitled to tip distributions under federal and state law. The event coordinators worked in an administrative capacity and were not Service Employees.

101.    On a regular basis, Slawinski, Bernas, Chandler, Widtmann and Teuber worked in excess of 40 hours a week.

102.    However, every paycheck they received during their employment showed that they worked 40 hours or less each week.

103.    Slawinski, Bernas, Chandler, Widtmann and Teuber never received compensation for any hour worked over 40 hours, nor did they receive overtime pay.

104.    Regardless of the number of hours they had worked, almost every paycheck that Slawinski, Bernas, Chandler and Widtmann received during their employment was in the amount of $0.00.

105.    Purportedly, the paychecks received by Slawinski, Bernas, Chandler and Widtmann were for hours worked as a server because they were never paid hourly wages for any hour worked as a Promo Girl.

106.    Defendants failed to inform Slawinski, Bernas, Chandler, Widtmann and Teuber of the tipped minimum wage or tip credit provisions of the FLSA and Illinois law.

107.    Defendants failed to keep accurate records of wages or tips earned by Slawinski, Bernas, Chandler, Widtmann and Teuber during their employment.

108.    Defendants failed to keep accurate records of the hours worked by Slawinski, Bernas, Chandler, Widtmann and Teuber and their similarly-situated co-workers throughout their employment.

**Plaintiff Mike Banks**

109.    Plaintiff Mike Banks ("Banks") worked at McFadden's from April 2012 to December 2012 as a full time Bartender.

110.    Banks clocked-in and clocked-out of every shift that he worked.

111.    Banks regularly worked in excess of 40 hours a week, and on a typical Saturday night shift, Banks worked from 5:00 p.m. to 4:00 a.m., and occasionally until 5:00 a.m. or 6:00

a.m.  On Mondays, Banks was responsible for closing the bar, which required him to work 13 to 14 hour shifts, from 5:00 p.m. to between 6:00 a.m. and 7:00 a.m.

112.    However, every paycheck Banks received during his employment shows that Banks worked 40 hours or less each week. Banks never received compensation for any hour worked over 40 hours, nor did he receive overtime pay.

113.    Regardless of the actual hours Banks worked, almost every paycheck that Banks received during his employment was for $0.00.

114.    At no time during his employment was Banks or any other service employee provided copies of tip closing sheets or other records indicating the tip pool allocations on a daily or weekly basis.

## COLLECTIVE ACTION ALLEGATIONS

115.    Plaintiffs Stephanie Slawinski, Melissa Bernas, Nicole Chandler, Kara Widtmann, Sarah Teuber and Mike Banks bring the First and Second Causes of Action pursuant to the FLSA on behalf themselves and the FLSA Collective.

116.    Plaintiffs and the FLSA Collective consist of similarly-situated Service Employees who performed work for Defendants in jobs incidental to Defendant McFadden's operations.

117.    The number and identity of the FLSA Collective members are determinable from Defendants' records.  For purposes of notice, their names and addresses are readily available from Defendants.

118.    At all relevant times, Plaintiffs and the FLSA Collective members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices,

procedures, protocols, routines and rules, all of which culminate in willful wage and hour violations.

119.    The proposed FLSA Collective is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court.

120.    In addition, the names of all potential members of the putative FLSA Collective are not known. The facts on which the calculation of that number are based, however, are presently within the sole control of Defendants, and upon information and belief, there are more than two hundred (200) members of the FLSA Collective.

121.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the FLSA Collective, and the relief sought is typical of the relief, which would be sought by each member of the FLSA Collective in separate actions.

122.    All the FLSA Collective members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and overtime compensation.

123.    Defendants' policies and practices affected all FLSA Collective members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each FLSA Collective member.

124.    Plaintiffs and other FLSA Collective members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

125.    Plaintiffs are able to fairly and adequately protect the interests of the FLSA Collective and have no interests antagonistic to its members.

126.    Prosecution of separate actions by individual members of the FLSA Collective would create a risk of inconsistent and/or varying adjudications with respect to the individual members, establishing incompatible standards of conduct for Defendants and resulting in the

impairment of FLSA Collective members' rights and the disposition of their interests through actions to which they were not parties.

127.    There are questions of law and fact common to the FLSA Collective which predominate over any questions affecting only individual class members, including, but not limited to:

a.    Whether Defendants employed Plaintiffs and FLSA Collective members within the meaning of the FLSA;

b.    What are and were the policies, procedures and protocols of Defendants regarding the types of work for which Defendants did not pay the FLSA Collective members properly;

c.    Whether Defendants paid Plaintiffs and FLSA Collective members their lawfully earned minimum wages in accordance with the FLSA;

d.    Whether Defendants paid Plaintiffs and FLSA Collective members their lawfully earned overtime wages in accordance with the FLSA;

e.    Whether Defendants properly distributed gratuities earned by Plaintiffs and FLSA Collective members in accordance with the FLSA;

f.    Whether Defendants' policy of failing to pay Plaintiffs and FLSA Collective members was instituted willfully or with reckless disregard of the law; and

g.    The nature and extent of class-wide injury and the measure of damages for those injuries.

## RULE 23 CLASS ALLEGATIONS

128.    Plaintiffs Stephanie Slawinski, Melissa Bernas, Nicole Chandler, Kara Widtmann, Sarah Teuber and Mike Banks bring the Third through Fifth Causes of Action under Rule 23 of the FRCP, on behalf of themselves, the Illinois Minimum Wage Class and the Illinois IWPCA Class (collectively, the "Illinois Class").

129.   Plaintiffs and the Illinois Class consist of similarly-situated employees who performed work for Defendants as Service Employees in jobs incidental to Defendant McFadden's operations.

130.   The number and identity of the Illinois Class members are determinable from Defendants' records.  For purposes of notice, their names and addresses are readily available from Defendants.

131.   At all relevant times, Plaintiffs and Illinois Class members are and have been similarly-situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, procedures and rules, all culminating in willful wage and hour violations.

132.   The proposed Illinois Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. In addition, the names of all potential members of the putative class are not known.

133.   The facts upon which the calculation of that number is based, however, are presently within the sole control of Defendants, and upon information and belief, there are more than forty (40) members of the Illinois Class.

134.   Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Illinois Class, and the relief sought is typical of the relief, which would be sought by each member of the Illinois Class in separate actions.

135.   All the Illinois Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, overtime compensation and misappropriated tips.

136. Defendants' policies and practices affected all Illinois Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Illinois Class member. Plaintiffs and other Illinois Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

137. Plaintiffs are able to fairly and adequately protect the interests of the Illinois Class and have no interests antagonistic to its members.

138. Prosecution of separate actions by individual members of the Illinois Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Illinois Class members' rights and the disposition of their interests through actions to which they were not parties.

139. There are questions of law and fact common to the Illinois Class which predominate over any questions affecting only individual class members, including, but not limited to:

a. Whether Defendants violated the IMWL, 820 ILCS 105/1, *et seq*.;

b. Whether Defendants failed to pay Plaintiffs and Illinois Class members minimum wages for all of the hours they worked pursuant to 820 ILCS 105/4;

c. Whether Defendants compensated Plaintiffs and Illinois Class members for hours worked in excess of 40 hours per workweek pursuant to 820 ILCS 105/4a;

d. Whether Defendants properly distributed gratuities earned by Plaintiffs and Illinois Class members in accordance with the IMWL;

e. Whether Defendants failed to pay earned wages for all hours worked by Plaintiffs and Illinois Class members, as required by the IWPCA;

f. Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and Illinois Class members, and other records required by the IWPCA;

g. Whether Defendants' policy of failing to pay Plaintiffs and Illinois Class members was instituted willfully or with reckless disregard of the law; and

21

h.      The nature and extent of class-wide injury and the measure of damages for those injuries.

### COUNT I
### THE FAIR LABOR STANDARDS ACT
### OVERTIME WAGE COMPENSATION
### (On behalf of Plaintiffs and the FLSA Collective)

140.    Plaintiffs hereby repeat and reallege all allegations as if fully set forth herein.

141.    Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

142.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

143.    Plaintiffs and FLSA Collective members are employees within the meaning of the FLSA, 29 U.S.C. § 203(e).

144.    In violation of 29 U.S.C. § 207, Defendants had a policy and practice of failing to pay Plaintiffs and FLSA Collective members their earned overtime wages, at the rate of one and one-half times the regular rate of pay, for all time in which they worked in excess of forty (40) hours in any given week.

145.    Defendants knew of or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective members at the statutory rate of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

146.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective members suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount in liquidated damages.

147.    Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

148.    Plaintiffs and FLSA Collective members are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**THE FAIR LABOR STANDARDS ACT**
**MINIMUM WAGE COMPENSATION**
**(On behalf of Plaintiffs and the FLSA Collective)**

149.    Plaintiffs hereby repeat and reallege all allegations as if fully set forth herein.

150.    In violation of 29 U.S.C. § 206, the Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and FLSA Collective members for their hours worked.

151.    Defendants failed to pay hourly wages to Plaintiffs and FLSA Collective members for all hours worked.

152.    Defendants failed to compensate Plaintiffs and FLSA Collective members with hourly wages and instead forced employees to participate in mandatory tip pool arrangements, percentages of which were the only form of compensation employees received.

153.    At all relevant times, Defendants knew of or showed a willful disregard for the provisions of the FLSA.

154.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective members suffered damages in an amount not presently ascertainable of unpaid minimum wages, plus an equal amount as liquidated damages.

155.    Plaintiffs and FLSA Collective members are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT III**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**OVERTIME WAGE COMPENSATION**
**(On behalf Plaintiffs and the Illinois Class)**

156.    Plaintiffs hereby repeat and reallege all allegations as if fully set forth herein.

157.    At all relevant times, the overtime wage provisions of the IMWL apply to Defendants, and protect Plaintiffs and Illinois Class members.

158.    Upon information and belief, Plaintiffs and Illinois Class members regularly worked more than forty (40) hours a week for Defendants.

159.    Pursuant to the IMWL, Plaintiffs and Illinois Class members were entitled to be paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

160.    In violation of the IMWL, Defendants failed to pay Plaintiffs and Illinois Class members overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

161.    Pursuant to 820 ILCS 105/12(a), Plaintiffs and the Illinois Class members are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this action.

162.    Due to Defendants' violations of the IMWL, Plaintiffs and the Illinois Class members are entitled to recover from Defendants their unpaid overtime wages pursuant to the formula set forth in 820 ILCS 105/12(a) and 815 ILCS 205/2, and reasonable attorneys' fees and costs.

### COUNT IV
### VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW
### MINIMUM WAGE COMPENSATION
#### (On behalf of Plaintiffs and the Illinois Class)

163.    Plaintiffs hereby repeat and reallege all allegations as if fully set forth herein.

164.    The minimum wage provisions of the IMWL apply to Defendants, and protect Plaintiffs and Illinois Class members.

165.    Defendants failed to pay the Illinois-mandated minimum wages for all hours worked by Plaintiffs and Illinois Class members.

166.    Pursuant to 820 ILCS 105/12(a), Plaintiffs and the Illinois Class members are entitled to recover unpaid wages for three (3) years prior to the filing of this action.

167.    Due to Defendants' violations of the IMWL, Plaintiffs and the Illinois Class members are entitled to recover from Defendants their unpaid minimum wages pursuant to the formula set forth in 820 ILCS 105/12(a) and 815 ILCS 205/2, and reasonable attorneys' fees and costs.

## COUNT V
## VIOLATIONS OF THE ILLINOIS WAGE
## PAYMENT AND COLLECTION ACT
### (On behalf of Plaintiffs and the Illinois Class)

168.    Plaintiffs hereby repeat and reallege all allegations as if fully set forth herein.

169.    The IWPCA requires an employer, such as Defendants, to compensate employees for all hours worked. 820 ILCS 115/1 *et seq.*

170.    Defendants failed to keep accurate records of time worked by Plaintiffs and Illinois Class members.

171.    Defendants failed to make a good faith effort to comply with the IWPCA in respect to compensating Plaintiffs and Illinois Class members for their hours worked and/or overtime compensation.

172.    Within the meaning of the IWPCA, Defendants had an agreement with Plaintiffs and Illinois Class members to compensate them for all hours worked at an agreed upon rate.

173.    Defendants failed to pay Plaintiffs and Illinois Class members for all hours worked at a rate agreed to by the parties in violation of the IWPCA, 820 ILCS 115/4.

174.    Plaintiffs and Illinois Class members are entitled to recover all of their unpaid earned wages for a period of ten (10) years prior to the filing of this lawsuit.

175.    Defendants' failure to comply with the IWPCA was reckless and/or willful.

25

176. Based on the foregoing, Plaintiff and Illinois Class members are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant the IWPCA. 820 ILCS 115/1 *et seq*.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the FLSA Collective and the Illinois Class, respectfully pray for relief against Defendants as follows:

a. An order permitting Plaintiffs to give notice of this collective action, or that this Court give such notice, at the earliest permissible time, to all members of the FLSA Collective and the Illinois Class;

b. An injunction against Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid overtime compensation, minimum wages and liquidated damages due under the FLSA;

d. An award of unpaid overtime compensation, minimum wages and other unpaid wages and liquidated damages under the IMWL and IWPCA;

e. Statutory damages for Plaintiff and the Illinois Class pursuant to the formula set forth in 820 ILCS 105/12(a);

f. An award of unpaid wages due to misappropriation of tip pool monies due under the IMWL;

g. Reasonable attorneys' fees and costs of this action as provided by the IMWL, 820 ILCS 105/1 *et seq*.;

h. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

i. Designation of this action as a class action pursuant to Rule 23;

j. Designation of Plaintiffs as class representatives;

k. Reasonable incentive awards for each named Plaintiff to compensate them for the time they spent attempting to recover wages for the FLSA Collective and Illinois Class members and for the risks they took in doing so; and

l. Such other and further relief as this Court deems just and proper.

26

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable as of right by jury.

Dated:  December 17, 2014
        New York, New York

                                            Respectfully submitted,

                                            IMBESI CHRISTENSEN

By:    */s/ Jeanne Christensen*
        Jeanne Christensen
        450 Seventh Avenue, Suite 1408
        New York, New York 10123
        (212) 736-5588 (Phone)
        (212) 658-9177 (Fax)
        jchristensen@lawicm.com

                  -and-

        WIGDOR LLP
By:    */s/Douglas H. Wigdor*
        Douglas H. Wigdor (to be admitted)
        David E. Gottlieb (to be admitted)
        85 Fifth Avenue
        New York, NY 10003
        Telephone:  (212) 257-6800
        Facsimile:  (212) 257-6845
        dwigdor@wigdorlaw.com
        dgottlieb@wigdorlaw.com

        ***Attorneys for Plaintiffs and Proposed Counsel for the FLSA Collective and Illinois Class***